IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| 1800 DIAGONAL LENDING, LLC,　　　　) | |
| 　　　　　　　　　　　　　　　　　　) | |
| 　　　　　　　Plaintiff,　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　) | |
| 　v.　　　　　　　　　　　　　　　　) | Civil Action No. 1:23cv1150 (DJN/JFA) |
| 　　　　　　　　　　　　　　　　　　) | |
| AMERICAN INTERNATIONAL　　　　　　　) | |
| HOLDINGS CORP.,　　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　) | |
| 　　　　　　　Defendant.　　　　　　) | |
| _____　) | |

**PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS**

This matter is before the court on plaintiff 1800 Diagonal Lending, LLC's ("plaintiff") motion for default judgment against defendant American International Holdings Corp. ("defendant"). (Docket no. 24). Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court his proposed findings of fact and recommendations, a copy of which will be provided to all interested parties.

**Procedural Background**

On August 1, 2023, plaintiff filed a verified complaint in the Circuit Court of Fairfax County, Virginia. (Docket no. 1-1) ("Compl."). Defendant was served with the summons and complaint on August 7, 2023. (Docket no. 1 ¶ 2). Defendant filed a notice of removal on August 28, 2023. (Docket no. 1). On August 31, 2023, the court ordered that defendant file a responsive pleading by September 5, 2023, and that plaintiff file any motion for remand by September 27, 2023. (Docket no. 2). On September 4, 2023, defendant filed a motion for extension of time to file a responsive pleading to the complaint. (Docket no. 3). On September

1

11, 2023, the court entered an order granting defendant's motion for extension of time and extended defendant's deadline to file a responsive pleading to September 19, 2023. (Docket no. 6). On September 19, 2023, defendant filed an answer to plaintiff's complaint. (Docket no. 8). On September 26, 2023, plaintiff filed a motion to remand to state court and a memorandum in support. (Docket nos. 9, 10). On October 2, 2023, plaintiff noticed a hearing on its motion to remand for October 20, 2023. (Docket no. 11).

Counsel for defendant filed a motion to withdraw on October 9, 2023 and waived oral hearing. (Docket no. 12, 13). On October 11, 2023, the court denied the motion without prejudice, requiring that counsel ascertain from defendant whether it intended to obtain new representation or default since it cannot proceed *pro se*. (Docket no. 14). The court further suspended defendant's deadline to respond to plaintiff's motion to remand and informed counsel for defendant that they may renew the motion to withdraw on October 16, 2023, along with specifying defendant's plans to defend the action. *Id.* On October 16, 2023, counsel for defendant requested an extension of time to file their renewed motion to withdraw as counsel, which the court granted that same day. (Docket nos. 15, 16). On October 20, 2023, counsel for defendant renewed their motion to withdraw and on October 22, 2023, waived the oral hearing. (Docket nos. 18, 19). On October 23, 2023, the court granted the motion to withdraw and ordered that if no appearance was made on behalf of defendant within fourteen days of the order, plaintiff was directed to seek an entry of default against defendant. (Docket no. 20). Counsel did not make an appearance on behalf of defendant and on November 8, 2023, plaintiff requested an entry of default as to defendant. (Docket no. 21). On November 9, 2023, the Clerk entered default as to defendant. (Docket no. 22).

On January 5, 2024, the court ordered that plaintiff file a motion for default judgment against defendant and an accompanying memorandum setting forth its factual and legal support. (Docket no. 23). On January 18, 2024, plaintiff filed its motion for default judgment as to Counts I and III, a memorandum in support, an affidavit in support, attached exhibits, and noticed the motion for a hearing for February 9, 2024. (Docket nos. 24, 25).[1] At the hearing on February 9, 2024, counsel for plaintiff appeared, but no one appeared on behalf of defendant. On February 9, 2024, plaintiff filed and mailed defendant a notice along with an attorney's fees affidavit. (Docket no. 27). On February 12, 2024, plaintiff filed a notice requesting that Count III also be dismissed without prejudice and that the court proceed with the motion for default judgment as to Count I only. (Docket no. 30).

## Factual Background

The following facts are established by the complaint, the motion for default judgment, the memorandum in support, and incorporated exhibits. (Compl.; Docket nos. 24, 24-1, 24-3, 24-4, 24-5, 24-6, 24-7, 24-8, 24-9, 24-10). On or about October 3, 2022, plaintiff and defendant executed and delivered to each other a securities purchase agreement (the "October Agreement"). (Compl. ¶ 5; *see* Docket no. 24-3). On that same day, plaintiff and defendant, pursuant to the October Agreement and upon payment of the principal amount contained therein by plaintiff, executed and delivered to the plaintiff a convertible promissory note (the "October Note") in the amount of $59,400.00. (Compl. ¶ 6); (*see* Docket no. 24-4).

On or about November 29, 2022, plaintiff and defendant executed and delivered to each other another securities purchase agreement (the "November Agreement"). (Compl. ¶ 7); (*See*

---

[1] In this motion plaintiff requests that Count II be dismissed without prejudice. (Docket no. 24-1 at 4).

Docket no. 24-5). On that same day, plaintiff and defendant, pursuant to the November Agreement and upon payment of the principal amount contained therein by plaintiff, executed and delivered to plaintiff a convertible promissory note (the "November Note") in the amount of $58,050.00. (Compl. ¶ 8); (*see* Docket no. 24-6). The parties agreed that by the acceptance of the Notes, each party was bound by the applicable terms of the Purchase Agreements. (*See* Docket nos. 24-4, 24-6 ¶ 4.7).

Pursuant to paragraph 4.g. of the October and November Agreements (referred to collectively as the "Purchase Agreements"), defendant agreed to comply with the Securities Exchange Act of 1934 ("Exchange Act") so long as the October and November Notes (referred to collectively as the "Notes") were unpaid. (Compl. ¶ 11; *See* Docket nos. 24-3, 24-5 at ¶ 4.g.). Additionally, pursuant to paragraph 3.8 of the Notes, defendant's failure to comply with the reporting requirements of the Exchange Act qualified as an event of default. (Compl. ¶ 11; *see* Docket no. 24-6 ¶ 3.8).

Plaintiff alleges defendant failed to comply with the reporting requirements of the Exchange Act, as required by the Notes and Purchase Agreements, when it failed to timely file its annual report for the fiscal year ending on December 31, 2022. (Compl. ¶ 12). On April 17, 2023, due to defendant's failure to comply with the Exchange Act, plaintiff delivered a default notice under the Notes to defendant. (Docket no. 24-7). The default notice stated that the current balance owed on the Notes was $112,950.00 and demanded immediate payment of the default amount as specified in the Notes: (1) an amount equal to 150% of the balance of the Notes ($112,950.00 x 1.5 = $165,425.00); (2) accrued and unpaid interest on the unpaid principal amounts of the Notes; (3) default interest on the principal amount and accrued and unpaid interest; and (4) any other amounts owed to plaintiff ("Default Amount"). (Compl. ¶ 14; Docket

4

no. 24-7; *see* Docket nos. 24-4, 24-6 ¶ 3.13). Plaintiff alleges defendant has not made any of these payments. (Compl. ¶ 15).

## Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Based on the corporate defendant's failure to have counsel make an appearance on its behalf, the Clerk has entered a default as to defendant. (Docket no. 22).

A defendant in default admits the factual allegations in the complaint. *See GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 613 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.

## Jurisdiction and Venue

A court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment. This matter is properly before the court pursuant to 28 U.S.C. § 1332. (Docket no. 1-1). Before defendant's default, it properly removed this matter to the court based on diversity jurisdiction, as the case involves complete diversity of the parties and an amount in controversy exceeding $75,000. (Docket no. 1-1 ¶ 5). Plaintiff is a limited liability company with its sole member residing in New York. (Docket no. 1 ¶ 7; Docket no. 9-8). Defendant is a Nevada corporation with its principal place of business in Electra, Texas. (Docket no. 1 ¶ 7).

5

Concerning personal jurisdiction and venue, plaintiff and defendant agreed in both Notes that "[a]ny action brought by either party . . . shall be brought only in the state courts of Virginia or in the federal courts located in the state and city of Alexandria, Virginia." (*See* Docket nos. 24-4, 24-6 ¶ 4.6). They further agreed that they irrevocably waived any objection to jurisdiction and venue. *Id.* Therefore, this court has personal jurisdiction over defendant and venue is proper.

For these reasons, the undersigned recommends a finding that this court has subject matter jurisdiction over this action, that this court has personal jurisdiction over defendant, and that venue is proper in this court.

### Service

Pursuant to Federal Rule of Civil Procedure 4(h)(1)(A) a corporation may be served in the manner prescribed by Federal of Civil Procedure Rule 4(e)(1), which allows for service to be made in accordance with the laws of the state where the district court is located or where service is made. Plaintiff served defendant with the summons and complaint on August 9, 2023, by service through the Secretary of the Commonwealth in accordance with VA. CODE ANN. § 8.01-329. (Docket no. 24-1 ¶ 2). Defendant timely removed this action to this court on August 28, 2023, after receiving notice of the suit in the Circuit Court of Fairfax County, Virginia. (Docket no. 1 ¶ 1). Defendant's removal of this action establishes that defendant had actual notice of the proceedings against it.

Based on the foregoing, the undersigned magistrate judge recommends a finding that service of process has been accomplished in this action and defendant has notice of this action.

## Grounds for Entry of Default

In accordance with the court's order, defendant was required to obtain counsel to make an appearance on its behalf on November 6, 2023, fourteen (14) days after the court entered its order granting withdrawal of defendant's counsel. (Docket no. 20). The order stated that in the event defendant did not obtain counsel, plaintiff was directed to seek an entry of default against defendant. *Id.* On November 8, 2023, plaintiff filed a request for entry of default against defendant pursuant to Federal Rule of Civil Procedure 55(a). (Docket no. 21). The Clerk entered a default against defendant on November 9, 2023. (Docket no. 22).

For the reasons stated above, the undersigned magistrate judge recommends a finding that the Clerk properly entered a default as to defendant.

## Liability

According to Federal Rule of Civil Procedure 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Given that a default has been entered, the factual allegations in the complaint are deemed admitted. *See* Fed. R. Civ. P. 8(b)(6); *GlobalSantaFe Corp.*, 250 F. Supp. 2d at 613.

### Breach of Contract (Count I)[2]

Plaintiff's breach of contract claim is based upon defendant's breach of the Notes. (Compl. ¶ 30). Plaintiff alleges defendant failed to maintain its reporting status under the Exchange Act as it was obligated to under the terms of the Notes. (Compl. ¶ 30.a.). Plaintiff

---

[2] Plaintiff also included a fraud in the inducement claim in its complaint (Count II) and a request for equitable relief (Count III), however, plaintiff asks the court to dismiss Counts II and III without prejudice. (*See* Docket nos. 24-1 at 4, 30). For this reason, the proposed findings of fact and recommendations will focus only on the breach of contract claim (Count I).

7

also alleges defendant failed to pay the balance due on the Notes after receiving a default notice from plaintiff. (Compl. ¶ 30.c.).

The parties to the Notes agreed that Virginia law would govern any disputes thereon. (Docket nos. 24-4, 24-6 ¶ 4.6).[3] Under Virginia common law, breach of a promissory note is encompassed under a breach of contract claim. *Premier Bank, Inc. v. Tech. Res., Inc.*, 2013 WL 6834380, at *5 (E.D. Va. Dec. 23, 2013) (citations omitted). To establish a breach of contract claim under Virginia law, the required elements are: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) defendant's violation or breach of that obligation; and (3) injury or damage to plaintiff caused by the breach of obligation." *Sunrise Continuing Care, LLC v. Wright*, 671 S.E.2d 132, 135 (Va. 2009) (quoting *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)). To the extent provisions of the Purchase Agreements are referenced in relation to defendant's breach of the Notes, Virginia courts have repeatedly found that, "where two papers are executed at the same time or contemporaneously between the same parties, in reference to the same subject matter, they must be regarded as parts of one transaction, and receive the same construction as if their several provisions were in one and the same instrument." *Countryside Orthopaedics, P.C. v. Peyton*, 541 S.E.2d 279, 284 (Va. 2001).

On or about October 3, 2022, and November 29, 2022, plaintiff and defendant entered into the respective Purchase Agreements and Notes. (Compl. ¶¶ 5, 7). Pursuant to the October Purchase Agreement, plaintiff as buyer and defendant as seller, agreed that buyer would purchase the Note in the aggregate principal amount of $58,050.00, which was convertible into shares of common stock of defendant's company. (Compl. ¶ 6). In November, plaintiff and

---

[3] Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances. *Hitachi Credit America Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999) (citations omitted).

8

defendant agreed to the same, in the aggregate principal amount of $59,400.00. (Compl. ¶ 8). Plaintiff made payment of the principal amount on both Notes on their respective closing dates. (Compl. ¶ 29). Pursuant to the terms of both the Notes, defendant agreed to pay plaintiff the amounts due under the Notes, including interest on the unpaid principal balance at the rate of six percent per annum from the date of issuance. (*See* Docket nos. 24-4, 24-6 at 1). A representative for defendant signed both Notes thereby creating a legally enforceable obligation of defendant to plaintiff. (*See* Docket nos. 24-4, 24-6 at 12).

Pursuant to the terms of the Notes, defendant was required to maintain its reporting requirements as required by the Exchange Act (Compl. ¶ 30.a.; *see* Docket nos. 24-4, 24-6 ¶ 3.8); and, in the event of a default, and upon delivery of a default notice by plaintiff to defendant, pay plaintiff the amount due under the Notes plus an amount equal to 150% times the sum of the outstanding principal on the Notes together with accrued interest and accrued default interest (Compl. ¶¶ 30.c., 32; *see* Docket nos. 24-4, 24-6 ¶ 3.13).[4] Plaintiff alleges defendant failed to meet these requirements and subsequently failed to pay the required Default Amount. Therefore, the defendant breached its obligations to plaintiff. The breach caused harm or injury to plaintiff as plaintiff has not been paid the amount due on the Notes.

Accordingly, the undersigned recommends a finding that plaintiff has established that defendant breached the Notes between the parties.

---

[4] The Notes also required defendant to, upon receipt of a notice of conversion, issue and deliver or cause to be issued and delivered the conversion amount requested within three business days after such receipt, and if it failed to do so to pay $2,000.00 each day defendant failed to provide the common stock (Compl. ¶ 30.d.; *see* Docket nos. 24-4, 24-6 ¶ 1.4(e)) and to have authorized and reserved three and one half (3.5) times the number of shares that would be issuable upon full conversion of the Notes (Compl. ¶ 30.b.; *see* Docket nos. 24-4, 24-6 ¶ 1.3).

## Relief

As set forth in the memorandum in support of the motion for default judgment, plaintiff seeks a judgment pursuant to Count I in the amount of $169,425.50, plus default interest at the rate of 22% per annum on the default amount from April 22, 2023 until paid, and its reasonable legal fees and costs in this litigation. (Docket no. 24-1 at 3).

**Monetary Damages**

Under the terms of the Notes, defendant was obligated to certain requirements explained above. (*See* Docket nos. 24-4, 24-6). Defendant failed to meet certain requirements under the Notes and was therefore in default. (*See* Compl. ¶¶ 30.a.–30.d.). As a result of defendant's default on the Notes and failure to pay the amount due under the terms of the Notes, plaintiff is entitled to recover monetary damages under the terms of the Notes.

As stated in the letter of default and complaint, at the time of default the current balance due under the Notes was $112,950.00. (Docket nos. 1-1 ¶ 32, 24-7). Therefore, plaintiff is certainly entitled to $112,950.00 (the unpaid face value of the two Notes) in monetary damages under the terms of the Notes. In addition to the unpaid amounts due under the Notes, the express terms of the Notes provide that in the event of a default plaintiff is entitled to 150% times the amount due on the Notes. (Docket nos. 24-4, 24-6 at 9). Parties to an agreement are free to agree upon an amount to be paid as compensation for injury or loss resulting from a breach of contract when the actual damages "are uncertain and difficult to determine with exactness," and Virginia courts have found that "where the damage resulting from a breach of contract is susceptible of definite measurement *(as when the breach consists of failure to pay a sum of money)* or where the stipulated amount would be *grossly in excess of the actual damages*, courts usually construe such an agreement to be an unenforceable penalty." *301 Dahlgren Ltd. P'ship*

*v. Bd. of Supervisors of King George Cnty. for and on behalf of Dahlgren Sanitary Dist.*, 396 S.E.2d 651 (Va. 1990) (quoting *Taylor v. Sanders,* 353 S.E.2d 745, 747 (1987)). While an argument could be made that a provision for 150% times the principal amount due to a defendant's default could be considered an unenforceable penalty in a case involving a simple breach of a promissory note, this is not a simple breach of a promissory note case. In this case plaintiff issued convertible promissory notes and related securities purchase agreements. The parties' agreement that any unpaid amounts due under the Notes could be converted into assessable shares of common stock in defendant justify such an additional remedy since the value of that additional provision is difficult to ascertain.

Accordingly, the undersigned recommends a finding that plaintiff is entitled to the requested $169,425.00 ($112,950.00 x 1.5) in monetary damages for the failure to pay the amounts due under the Notes.

**Interest**

Plaintiff seeks interest at the default interest rate of twenty-two percent (22%) per annum pursuant to the terms of the Notes from April 22, 2023 until paid. (Docket no. 24-1 at 3). The Notes provide that "[a]ny amount of principal or interest on this Note which is not paid when due shall bear interest at the rate of twenty two percent (22%) per annum from the date thereof until the same is paid in full." (Docket nos. 24-4 and 24-6 at 1). The state law applicable to the breach of contract claim governs the award of prejudgment interest. *See Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 644 (4th Cir. 1999). According to Virginia law, "[t]he judgment rate of interest . . . in an action arising from a contract shall carry interest at the rate lawfully charged on such contract . . ." VA. CODE ANN. § 6.2-302(A).

11

In this case, the Notes on which the breach of contract claim is brought clearly define an initial interest rate of 6% per annum from the date of the Notes issuance until the Notes becomes due and payable and that any amount of principal or interest on the Note which is not paid when due shall bear interest at the rate of 22%. (Docket nos. 24-4, 24-6 at 1). Plaintiff delivered a notice of default to defendant on April 17, 2023, demanding immediate payment of $169,425.00. (Docket no. 24-7). Under the terms of the Notes, defendant then had five days to pay the amounts due under the Notes. (Docket nos. 24-4, 24-6 ¶ 3.1).

Given the above, it is recommended that plaintiff be awarded interest at the rate of 22% per annum on the $169,425.00 from April 22, 2023 (five days after delivery of the notice of default) until paid.

**Attorney's Fees and Costs**

In its complaint, plaintiff requests reasonable legal fees and costs of the litigation. (Compl. at 13). As the parties agreed that Virginia law would govern this case, provisions governing attorneys' fees and costs are to be interpreted using Virginia law. *See Hitachi Credit America Corp.*, 166 F.3d 614, 624 (4th Cir. 1999). Under the "American Rule," a prevailing party generally cannot recover attorneys' fees from the losing party. *Ulloa v. QSP, Inc.*, 624 S.E.2d 43, 49 (Va. 2006) (Citing *Lee v. Mulford*, 611 S.E.2d 349, 350 (2005). However, parties are free to draft and adopt contractual provisions shifting the responsibility for attorneys' fees to the losing party in a contractual dispute. *Id.* (Citing *Mullins v. Richlands National Bank*, 403 S.E.2d 334, 335 (1991). A prevailing party entitled by law to an award of attorney fees has the burden of proving "that the requested fees are reasonable and that they were necessary." *Sidya v. World Telecom Exchange Communications, LLC*, 870 S.E.2d 199, 208 (Va. 2022) (quoting *West Square, L.L.C. v. Communication Techs., Inc.*, 649 S.E.2d 698, 702 (2007).

Here such a contractual provision exists. Pursuant to the terms of the Notes, the parties agreed that in the event of a default, the borrower would provide for costs of collection, including reasonable attorneys' fees and further that the prevailing party would be entitled to recover from the other party its reasonable attorney's fees and costs. (*See* Docket nos. 24-4, 24-6 ¶¶ 4.5, 4.6). On February 9, 2024, plaintiff filed and served a notice along with an attorney's fees affidavit requesting an award of attorney's fees and expenses in the amount of $23,568.92. (Docket no. 27). As set forth in Mr. Clary's affidavit, he has expended 46.7 hours of time in this case including reviewing materials from the client, research on applicable law, preparation of the complaint, preparing the motion to remand, preparing the motion for default judgment and supporting materials, and appearing in court. (Docket no. 27-1 ¶ 3). Mr. Clary is requesting an award based on an hourly rate of $485.00. Having reviewed the materials prepared in this matter and taking into consideration the nature of this action, the undersigned recommends a finding that the amount of time spent by Mr. Clary was reasonable. In addition, given his level of experience, the hourly rate of $485.00 is appropriate.

While it is not itemized, the request for $919.42 in reimbursable costs appears to be consistent with awards in similar cases. This would include filing fees, service fees, and copying expenses for the significant number of exhibits to the pleadings.

## Conclusion

For these reasons, the undersigned recommends that default judgment be entered in favor of plaintiff 1800 Diagonal Lending, LLC against American International Holdings Corp in the amount of $169,425.00, with interest accruing at the rate of 22% from April 22, 2023 until paid and $23,568.92 in attorney fees and costs.

## Notice

By means of the court's electronic filing system and by mailing a copy of this proposed findings of fact and recommendations to defendant American International Holdings Corp., 205 S Bailey Street, Electra, TX 76360 and 401 Ryland Street Suite, 200-A, Reno, NV 89502 the parties are notified that objections to this proposed findings of fact and recommendations must be filed within fourteen (14) days of service of this proposed findings of fact and recommendations and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

ENTERED this 29th day of February, 2024.

                                                                                               /s/
                                                                                John F. Anderson
                                                                      United States Magistrate Judge
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia